*Betty    954   701-9927*

## Step 1: Read and complete this form.

### Paychex Major Market Services Agreement

Company Name *Hays Robertson Grp*
Office/Client Number *40/ 0080*
Federal ID Number ▮▮▮▮

This Paychex Major Market Services Agreement ("Agreement") is entered into between Paychex, Inc. ("Paychex"), located in Rochester, New York and the Company identified above ("Client"). The Agreement will continue until terminated by Client or by Paychex in accordance with the provisions contained in this Agreement.

1. **Services.** In addition to Payroll Services, Client employs Paychex to provide the services initialed below ("Services"). Client will also receive, at no charge, the Tax Credit Analysis Service. All Services are described in the Product Terms and Conditions section of this Agreement. Paychex will not be obligated to commence any of the Services until Paychex receives all documents necessary to begin each of the Services and notifies Client of the date Paychex will commence performance each of the Services ("Service Effective Date"). Each of the Services may have different Service Effective Dates and Paychex may commence performance for one (1) or more Services without obligating itself to commence all Services selected by Client. Until the Service Effective Date, Client will continue to provide for itself, the Services requested of Paychex. Paychex assumes no responsibility for services prior to the Service Effective Date for each of the Services.



| | |
|---|---|
| _____ Preview® Hosting Service | _____ Work Opportunity Tax Credit Service |
| _____ Taxpay® (includes SUI Support Service) | _____ Paychex® HR Online |
| _____ Taxpay® (without SUI Support Service) | ✱ _AW_ Employee Access Online (EAO) |
| _____ State Unemployment Insurance Service (SUIS) | _____ Paychex® Online W-2 Service |
| ✱ _AW_ Direct Deposit | ✱ _AW_ Paperless Payroll |
| _____ Readychex® | _____ Paychex® Employee Screening Services |
| ✱ _AW_ Check Signing | _____ COBRA Administration |
| ✱ _AW_ Check Insertion | _____ Premium Only Plan (POP) |
| _____ Logo Service | ✱ _AW_ Garnishment Payment Service |

Client agrees that Paychex is not rendering legal, tax, accounting, or investment advice in connection with the Services to be performed, nor will Paychex be deemed a fiduciary of Client or the employer or joint employer of Client's employees. Paychex will not be responsible for Client's compliance with, nor will it provide legal or other financial advice to Client with respect to federal, state, and local statutes, regulations, or ordinances including, but not limited to, the Fair Labor Standards Act or any state equivalent. Client agrees to comply with any and all applicable federal, state, and local laws or ordinances.

Client understands that this Agreement (Rev. 4/08) may be considered an application for credit and hereby authorizes Paychex to investigate the credit of the Client and/or its principals, including vendor references, bank account status, and history (collectively "Client's Credit"). Paychex' performance of the Services under this Agreement is subject to approval of Client's Credit. Client warrants that it possesses full power and authority to enter into this Agreement, has chosen the Payroll Services and the Services initialed, and has read and agrees to the terms and conditions listed on the following pages.

Authorized Officer's Name ✱ *Winnie Dement*   Title ✱ *VP*
PRINT

Authorized Officer's Signature ✱ *CW Dement*   Date ✱ *12/3/08*   ◀ **Please Sign & Date**

# PRIMEPAY CLIENT SERVICES AGREEMENT

*handwritten top left: 1/8/10 10:45*

Company Name: *Hayes Robertson Group, Inc* *Fogarty's*
Client Number: 15016
Federal ID Number: ▇▇▇▇▇▇

**PRIMETAX**
*(Initials)* *CWB*
Client hereby engages and authorizes PrimePay, through its' affiliate PrimeTax, on or before Client's check date, to process EFT transactions, or such other payment methods as PrimeTax may require, for such amounts as are necessary to pay to proper taxing authorities, the payroll taxes which are specifically identified on the payroll journal. Such amounts are to be held in separate accounts established by PrimeTax until such time as these amounts are due to the appropriate taxing authorities. In addition, Client engages and authorizes PrimeTax to prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis.

**DIRECT DEPOSIT**
*(Initials)* *CWB*
Client hereby authorizes PrimePay to initiate the ACH debit file transaction forty-eight business hours (48) prior to the payroll check date.

**CHECK SIGNING**
*(Initials)* *CWB*
Client hereby engages and authorizes PrimePay to use Client's signature to create a computer-generated facsimile that will appear on each of Client's checks each payday.

**CHECK INSERTION**
*(Initials)* *CWB*
Client hereby engages and authorizes PrimeTax to insert Client's signed checks into individual employee envelopes that ~~will be sealed~~ and delivered to Client. NOT SEALED *1st checks delivered 1/10/07*

**PAY AS YOU GO WORKERS' COMPENSATION PROGRAM**
*(Initials)* *maybe*
Client hereby engages and authorizes PrimeTax to draft workers' compensation premium from Client's account and forward to the proper entities on Client's behalf.

**401(k) EMPLOYEE DEFERRALS AND EMPLOYER MATCH**
*(Initials)* *N/A*
Client hereby engages and authorizes PrimeTax to draft from Client's account and forward to the assigned institution the employee deferrals and applicable employer match monies.

**PRIMEPAY DEBIT INVOICE**
*(Initials)* *CWB*
Client hereby authorizes PrimePay to draft from Client's account the monthly billing invoice amount that Client would otherwise remit to PrimePay.

**PRIMESTUB**
*(Initials)* *CWB*
Client hereby engages and authorizes PrimePay to transmit payroll data via the internet in lieu of paper payroll direct deposit stubs for its' employees.

**PRIMESCREEN**
*(Initials)* *CWB*
Client hereby engages PrimePay for background and drug screening processes available for clients use in pre-employment hiring practices. *As requested only.*

**NO WAGES OR TAXES PAID**
*(Initials)* *N/A*
Client hereby confirms there have been no wages or payroll taxes paid under _____ federal identification number for the 20___ calendar year; therefore, I have no balances prior to commencing services with PrimePay.

**OTHER SERVICES**
*(Initials)* *CWB*
Client acknowledges and agrees that in consideration of other services provided by PrimePay or its' affiliates (PrimeTax or PrimeGroup Insurance Services, Inc.) all other services shall be governed by the Terms & Conditions of this agreement.

*I have initialed chosen services and agree to the general Terms and Conditions listed on the reverse side of this page.*

Print Authorized Officer's Name: *KAREN W. DeMent*
Authorized Officer's Signature: 
Title: *Owner*  Date: *1/4/07*

03:36:44

# TERMS AND CONDITIONS

1. **Term of Agreement.** PrimePay's performance of service(s) under this Agreement, is subject to approval of Client's credit and shall begin upon the date specified by PrimePay. The Agreement shall continue until terminated by Client or by PrimePay in accordance with the provisions contained herein. Until the date specified by PrimePay, Client shall continue to provide for itself the services(s) requested of PrimePay.

2. **Service(s) to be Performed.** Client hereby engages PrimePay to provide the service(s) selected as indicated by the Client's initials on the preceding page. Client acknowledges and agrees that PrimePay is not rendering legal, tax, accounting, or investment advise in connection with the services to be performed. PrimeTax, an affiliate of PrimePay, for so long as this Agreement is in effect and Client is utilizing PrimePay, for the processing of employee payrolls, and to the extent the Client has specifically authorized other Drafts shall, (a) either collect directly from Client, or draw directly upon Client, hold in a separate PrimeTax Account and deposit with an appropriate authorized depository, on or before the applicable statutory deadlines, the required Federal, State and Local payroll tax withholding and employer matching obligations; (b) prepare and file all required Federal, State and Local payroll tax forms and reports and (c) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and pay to the appropriate third parties all other sums due and owing for services chosen by Client ("Drafts"). Client agrees that PrimeTax may debit directly out of a pre-designated Demand Deposit Account(s) established at a bank designated by Client the necessary payroll tax deposit and all other Drafts due under this Agreement and other charges payable in connection herewith. For such purposes, Client shall execute all requested authorization forms. Client shall maintain at all times during the term of this Agreement, a sufficient balance in this account, to be readily accessible and available on Client's Scheduled Payday, to cover debits for all current or past due payroll taxes, to cover all other Drafts, to cover an NSF charge charged by Bank or payables under this Agreement. If the Bank, upon Client's instructions or otherwise, refuses to honor any electronic funds transfer or depository transfer check, PrimeTax will assess against Client an NSF charge as authorized by Florida Statute 832.08(5)(A)(B)(C) and, PrimeTax shall not be responsible for making the then due payroll tax deposits or filings, or remitting other Drafts, and shall have no liability whatsoever with respect thereto.

3. **Payment.** Client hereby agrees to pay for all PrimePay and PrimeTax service(s) through an Electronic Funds Transfer (EFT) transaction or such other payment method as required by PrimePay. Thus, if applicable, PrimePay is hereby authorized to collect all amounts due from the Client's bank account when due. In that event, Client agrees that the funds representing the total amount due for all services must be on deposit in Client's designated bank account in collectible form and in sufficient amount on the day the PrimePay EFT charge is initiated. If sufficient funds are not available upon presentation of PrimePay's EFT charge to the Client's bank account, PrimePay may take such action to coll monies due as it deems appropriate and consistent with this or a other written agreement with Client including, but not limited reissuance of the EFT. PrimePay's fees for services are subject change at any time.

4. **Client's Responsibility.** The Client agrees to acce the following obligations and responsibilities with respect to ea service selected:

A. to execute all documentation needed to originate EFT transactions and to verify availability of funds in the Client's designated bank account;

B. to execute any other documents which may be require to perform services;

C. to review all reports and documents forwarded t Client and to promptly inform PrimePay or PrimeTax of an inaccuracies therein;

D. to have available in Client's bank account, sufficien funds in collectible form to cover EFT transactions provided for in the Agreement or, to make payment by wire transfer or such othe payment method as required and to provide all information necessary to confirm receipt of the payment prior to the funding deadline; or

E. to provide all necessary information, including any changes thereto, pertaining to Client's employees; and to comply with any and all applicable federal, state, or local laws or ordinances.

F. to deliver to or otherwise provide accurate and complete payroll and employee information to calculate payroll tax and other Draft obligations no later than one (1) banking day prior to each "Scheduled Payday". If the Scheduled Payday falls on a Saturday, Sunday or bank holiday, then such information must be delivered or provided to PrimePay no later than two (2) banking days prior to such "Scheduled Payday". Payroll and employee information shall include, but is not limited to, employee information as required per IRS form W-4 for all active full-time and part-time employees (including all withholding exemptions and allowances), fixed salary amounts, hourly rates and hours, related information, and any other information necessary to process other Drafts. A "Scheduled Payday" means the date upon which the particular payroll paychecks for which the current payroll tax withholdings are being calculated, handled and processed by PrimePay will be dated.

G. to immediately deliver to PrimeTax a copy of any and all notices or correspondence received by Client from any federal, state, or local taxing authority concerning any tax return or payroll tax deposit made or filed by PrimeTax.

5. **Client's Default.** Client shall be deemed in default of the Agreements in the event it fails to comply with its responsibilities as outlined in Section 4. In the event of a Client Default, PrimePay may, at its sole option, declare all amounts owed by Client to PrimePay immediately due and payable. Client agrees to promptly reimburse PrimePay or PrimeTax for all advances made

by PrimePay or PrimeTax and to pay interest on the advances at the rate of one and one-half percent (1 ½ %) per month, or the maximum allowable by applicable law, until paid. Client shall execute and file all federal, state and local forms, consents and agreements necessary to effectively grant to PrimeTax full authorization to deposit and pay payroll tax items, recover and refunds and/or rebated penalty assessments, to prepare, sign and file payroll tax returns and reports and to represent, receive and submit records on behalf of Client before federal, state, or local tax offices or agencies with respect to payroll taxes.

6. **Termination.** Except as otherwise provided, the Agreements may be terminated by either party without written notice for any reason. Termination of the Agreement shall not relieve Client of any obligations set forth herein including, but not limited to, its payment obligations to PrimePay or its' affiliates.

7. **Limit of Liability.** Neither PrimePay, or its' affiliates, shall be liable for the negligence of any other person or entity including, but not limited to, the negligence of Client and its' employees or agents, or the negligence of any person or entity which provides services in connection with or as a result of PrimePay, or its' affiliates, performance of its' obligations under the Agreement. PrimePay's sole liability and the Client's sole remedy for PrimePay, or its' affiliates, breach of this Agreement shall be: (i) for PrimePay to remit to the appropriate Payee the funds received from the Client, and/or (ii) for PrimePay to reimburse the Client (or its' employees) for any interest or penalties assessed as a direct result of PrimePay, or its' affiliates, breach of the Agreement. Neither PrimePay, or its' affiliates, shall under any circumstance, be liable for any special, indirect, incidental or consequential damages which the Client may incur as a result of PrimePay, or its' affiliates, breach of the Agreement, or as a result of PrimePay, or its' affiliates, exercise of their rights under the Agreement, even if they have been advised of the possibility of such damages. Without limitation, PrimeTax shall not be liable for tax deficiencies, interest charges and/or penalties associated with any payroll tax payment or the failure to timely make any required payroll tax payment unless such deficiencies, interest charges and/or penalties result from the negligence of PrimeTax. PrimeTax assumes no responsibility and shall not be liable for failure to timely make payroll tax deposits or filings, or remit Drafts to third parties, if Client has not provided adequate and necessary payroll and employee information or if Client fails to provide PrimeTax or to maintain in the Demand Deposit Account(s), a sufficient source of monetary funds to cover such payroll tax, or other Draft obligations. In no event shall PrimeTax or PrimePay be responsible for a Client's actual liability for payroll tax withholding, employer matching or draft liabilities ("liabilities of Client") unless and until PrimeTax has, in fact, drafted funds for such liabilities of Client and then only to the extent of such drafts. Client agrees to indemnify and hold PrimePay, and its' affiliates, harmless against any and all claims, losses, damages, or expenses and to pay PrimePay for all costs, losses, damages, or expenses incurred, including, but not limited to, reasonable attorney's fees, in-house counsel fees, and EFT reissuance charges. If this Agreement gives PrimePay authorization to draft the approximate Workers' Compensation premiums and remit them to the insurance company, the Client is responsible for ensuring the accuracy of the Worker's Compensation reports provided by PrimePay based upon the information supplied by Client. Exempt employees must have an exemption certificate approved by the applicable state before the exemption will be coded. All new hires will be classed in the highest rated class code until the appropriate class code is provided to PrimePay. Workers' Compensation audits, required by the insurance company, are the responsibility of the Client. PrimePay will not be liable for any premiums that are due under the Client's Workers' Compensation Policy.

8. **Miscellaneous.** The Agreement shall be governed by the laws of the State of Florida. Except as provided herein, any dispute arising out of or in connection with the Agreement, if not otherwise resolved, shall be determined by binding arbitration in Tampa, Florida, in accordance with the commercial rules of the American Arbitration Association and any dispute arising out of or in connection with any other agreement between the parties may be consolidated into the same arbitration proceeding. The parties agree that the prevailing party in arbitration shall be awarded costs and attorney's fees (including in-house counsel fees) and that an Arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. This Miscellaneous provision shall survive the termination of the Agreement. The Agreement contains the entire understanding of the parties. The Client acknowledges that there have been no promises, representation or warranties made by PrimePay, or its' affiliates, or the Client, which are not set forth in the Agreement. PrimePay may modify any term of the Agreement by written notice to Client of such change and the effective date thereof. Client shall be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to PrimePay prior to the effective date of the change. If any provision of the Agreement or any portion thereof shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of the Agreement shall not in any way be affected or impaired. Without limitation, any reference herein to PrimePay shall apply to any and all affiliates of PrimePay.

9. **Assignability.** The Agreement may not be assigned by the Client to any third parties other than successors, without the prior written consent of PrimePay. Any assignment made without such consent shall be null and void.

10. **Relationship.** Except for the IRS Authorization forms, Reporting Agent Authorization and Employer Appointment of Agent, this Agreement establishes an independent contractor relationship only, by which PrimePay, and its' affiliates, will perform for Client the services described herein for the service fees. It is not intended by this Agreement that a partnership, joint venture, master/servant or similar relationship be established, and this Agreement shall not be construed in such manner.

Initials: _CWD_    Date: _1-11-04_
Initials: _____    Date: _____

03/26/04

# PRIMEPAY CLIENT SERVICES AGREEMENT

*(handwritten top left: 1/8/07 10:30)*

**Company Name:** *Hayes Ferguson Group Inc* / *Caroline's*
**Client Number:** 1505
**Federal ID Number:** _____

*(Initials: cwb)*

## PRIMETAX
Client hereby engages and authorizes PrimePay, through its' affiliate PrimeTax, on or before Client's check date, to process EFT transactions, or such other payment methods as PrimeTax may require, for such amounts as are necessary to pay to proper taxing authorities, the payroll taxes which are specifically identified on the payroll journal. Such amounts are to be held in separate accounts established by PrimeTax until such time as these amounts are due to the appropriate taxing authorities. In addition, Client engages and authorizes PrimeTax to prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis.

*(Initials: cwb)*

## DIRECT DEPOSIT
Client hereby authorizes PrimePay to initiate the ACH debit file transaction forty-eight business hours (48) prior to the payroll check date.

*(Initials: cwb)*

## CHECK SIGNING
Client hereby engages and authorizes PrimePay to use Client's signature to create a computer-generated facsimile that will appear on each of Client's checks each payday.

*(Initials: cwb)*

## CHECK INSERTION
Client hereby engages and authorizes PrimeTax to insert Client's signed checks into individual employee envelopes that will be sealed and delivered to Client. *NOT SEALED)* *1st checks delivered 1/10/07*

*(Initials: maybe)*

## PAY AS YOU GO WORKERS' COMPENSATION PROGRAM
Client hereby engages and authorizes PrimeTax to draft workers' compensation premium from Client's account and forward to the proper entities on Client's behalf.

*(Initials: N/A)*

## 401(k) EMPLOYEE DEFERRALS AND EMPLOYER MATCH
Client hereby engages and authorizes PrimeTax to draft from Client's account and forward to the assigned institution the employee deferrals and applicable employer match monies.

*(Initials: cwb)*

## PRIMEPAY DEBIT INVOICE
Client hereby authorizes PrimePay to draft from Client's account the monthly billing invoice amount that Client would otherwise remit to PrimePay.

*(Initials: cwb)*

## PRIMESTUB
Client hereby engages and authorizes PrimePay to transmit payroll data via the internet in lieu of paper payroll direct deposit stubs for its' employees.

*(Initials: cwb)*

## PRIMESCREEN
Client hereby engages PrimePay for background and drug screening processes available for clients use in pre-employment hiring practices. *As requested only.*

*(Initials: N/A)*

## NO WAGES OR TAXES PAID
Client hereby confirms there have been no wages or payroll taxes paid under _____
federal identification number for the 20___ calendar year; therefore, I have no balances prior to commencing services with PrimePay.

*(Initials: cwb)*

## OTHER SERVICES
Client acknowledges and agrees that in consideration of other services provided by PrimePay or its' affiliates (PrimeTax or PrimeGroup Insurance Services, Inc.) all other services shall be governed by the Terms & Conditions of this agreement.

*I have initialed chosen services and agree to the general Terms and Conditions listed on the reverse side of this page.*

Print Authorized Officer's Name: **KAREN W. DeMent**
Authorized Officer's Signature: _____
Title: **OWNER**        Date: **1/4/07**

03/26/04

**1. Term of Agreement.** PrimePay's performance of service(s) under this Agreement, is subject to approval of Client's credit and shall begin upon the date specified by PrimePay. The Agreement shall continue until terminated by Client or by PrimePay in accordance with the provisions contained herein. Until the date specified by PrimePay, Client shall continue to provide for itself the services(s) requested of PrimePay.

**2. Service(s) to be Performed.** Client hereby engages PrimePay to provide the service(s) selected as indicated by the Client's initials on the preceding page. Client acknowledges and agrees that PrimePay is not rendering legal, tax, accounting, or investment advise in connection with the services to be performed. PrimeTax, an affiliate of PrimePay, for so long as this Agreement is in effect and Client is utilizing PrimePay, for the processing of employee payrolls, and to the extent the Client has specifically authorized other Drafts shall, (a) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and deposit with an appropriate authorized depository, on or before the applicable statutory deadlines, the required Federal, State and Local payroll tax withholding and employer matching obligations; (b) prepare and file all required Federal, State and Local payroll tax forms and reports and (c) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and pay to the appropriate third parties all other sums due and owing for services chosen by Client ("Drafts"). Client agrees that PrimeTax may debit directly out of a pre-designated Demand Deposit Account(s) established at a bank designated by Client the necessary payroll tax deposit and all other Drafts due under this Agreement and other charges payable in connection herewith. For such purposes, Client shall execute all requested authorization forms. Client shall maintain at all times during the term of this Agreement, a sufficient balance in this account, to be readily accessible and available on Client's Scheduled Payday, to cover debits for all current or past due payroll taxes, to cover all other Drafts, to cover an NSF charge charged by Bank or payables under this Agreement. If the Bank, upon Client's instructions or otherwise, refuses to honor any electronic funds transfer or depository transfer check, PrimeTax will assess against Client an NSF charge as authorized by Florida Statute 832.08(5)(A)(B)(C) and, PrimeTax shall not be responsible for making the then due payroll tax deposits or filings, or remitting other Drafts, and shall have no liability whatsoever with respect thereto.

**3. Payment.** Client hereby agrees to pay for all PrimePay and PrimeTax service(s) through an Electronic Funds Transfer (EFT) transaction or such other payment method as required by PrimePay. Thus, if applicable, PrimePay is hereby authorized to collect all amounts due from the Client's bank account when due. In that event, Client agrees that the funds representing the total amount due for all services must be on deposit in Client's designated bank account in collectible form and in sufficient amount on the day the PrimePay EFT charge is initiated. If sufficient funds are not available upon presentation of PrimePay's EFT charge to the Client's bank account, PrimePay may take such action to colle[c] monies due as it deems appropriate and consistent with this or an other written agreement with Client including, but not limited t[o] reissuance of the EFT. PrimePay's fees for services are subject [to] change at any time.

**4. Client's Responsibility.** The Client agrees to acce[pt] the following obligations and responsibilities with respect to eac[h] service selected:

A. to execute all documentation needed to originate EFT transactions and to verify availability of funds in the Client's designated bank account;

B. to execute any other documents which may be require[d] to perform services;

C. to review all reports and documents forwarded t[o] Client and to promptly inform PrimePay or PrimeTax of an[y] inaccuracies therein;

D. to have available in Client's bank account, sufficie[nt] funds in collectible form to cover EFT transactions provided for i[n] the Agreement or, to make payment by wire transfer or such oth[er] payment method as required and to provide all informatio[n] necessary to confirm receipt of the payment prior to the fundin[g] deadline; or

E. to provide all necessary information, including an[y] changes thereto, pertaining to Client's employees; and to compl[y] with any and all applicable federal, state, or local laws [or] ordinances.

F. to deliver to or otherwise provide accurate an[d] complete payroll and employee information to calculate payroll ta[x] and other Draft obligations **no later than one (1) banking da[y] prior to each "Scheduled Payday". If the Scheduled Payday fall[s] on a Saturday, Sunday or bank holiday, then such informatio[n] must be delivered or provided to PrimePay no later than two (2[)] banking days prior to such "Scheduled Payday".** Payroll an[d] employee information shall include, but is not limited to, employe[e] information as required per IRS form W-4 for all active full-tim[e] and part-time employees (including all withholding exemptions an[d] allowances), fixed salary amounts, hourly rates and hours, relate[d] information, and any other information necessary to process othe[r] Drafts. A "Scheduled Payday" means the date upon which th[e] particular payroll paychecks for which the current payroll ta[x] withholdings are being calculated, handled and processed b[y] PrimePay will be dated.

G. to immediately deliver to PrimeTax a copy of any an[d] all notices or correspondence received by Client from any federal[,] state, or local taxing authority concerning any tax return or payrol[l] tax deposit made or filed by PrimeTax.

**5. Client's Default.** Client shall be deemed in default o[f] the Agreements in the event it fails to comply with it[s] responsibilities as outlined in Section 4. In the event of a Clien[t] Default, PrimePay may, at its sole option, declare all amounts owe[d] by Client to PrimePay immediately due and payable. Client agree[s] to promptly reimburse PrimePay or PrimeTax for all advances mad[e]

03/[...]

by PrimePay or PrimeTax and to pay interest on the advances at the rate of one and one-half percent (1 ½ %) per month, or the maximum allowable by applicable law, until paid. Client shall execute and file all federal, state and local forms, consents and agreements necessary to effectively grant to PrimeTax full authorization to deposit and pay payroll tax items, recover and refunds and/or rebated penalty assessments, to prepare, sign and file payroll tax returns and reports and to represent, receive and submit records on behalf of Client before federal, state, or local tax offices or agencies with respect to payroll taxes.

6. **Termination.** Except as otherwise provided, the Agreements may be terminated by either party without written notice for any reason. Termination of the Agreement shall not relieve Client of any obligations set forth herein including, but not limited to, its payment obligations to PrimePay or its' affiliates.

7. **Limit of Liability.** Neither PrimePay, or its' affiliates, shall be liable for the negligence of any other person or entity including, but not limited to, the negligence of Client and its' employees or agents, or the negligence of any person or entity which provides services in connection with or as a result of PrimePay, or its' affiliates, performance of its' obligations under the Agreement. PrimePay's sole liability and the Client's sole remedy for PrimePay, or its' affiliates, breach of this Agreement shall be: (i) for PrimePay to remit to the appropriate Payee the funds received from the Client, and/or (ii) for PrimePay to reimburse the Client (or its' employees) for any interest or penalties assessed as a direct result of PrimePay, or its' affiliates, breach of the Agreement. Neither PrimePay, or its' affiliates, shall under any circumstance, be liable for any special, indirect, incidental or consequential damages which the Client may incur as a result of PrimePay, or its' affiliates, breach of the Agreement, or as a result of PrimePay, or its' affiliates, exercise of their rights under the Agreement, even if they have been advised of the possibility of such damages. Without limitation, PrimeTax shall not be liable for tax deficiencies, interest charges and/or penalties associated with any payroll tax payment or the failure to timely make any required payroll tax payment unless such deficiencies, interest charges and/or penalties result from the negligence of PrimeTax. PrimeTax assumes no responsibility and shall not be liable for failure to timely make payroll tax deposits or filings, or remit Drafts to third parties, if Client has not provided adequate and necessary payroll and employee information or if Client fails to provide PrimeTax or to maintain in the Demand Deposit Account(s), a sufficient source of monetary funds to cover such payroll tax, or other Draft obligations. In no event shall PrimeTax or PrimePay be responsible for a Client's actual liability for payroll tax withholding, employer matching or draft liabilities ("liabilities of Client") unless and until PrimeTax has, in fact, drafted funds for such liabilities of Client and then only to the extent of such drafts. Client agrees to indemnify and hold PrimePay, and its' affiliates, harmless against any and all claims, losses, damages, or expenses and to pay PrimePay for all costs, losses, damages, or expenses incurred, including, but not limited to, reasonable attorney's fees, in-house counsel fees, and EFT reissuance charges. If this Agreement gives PrimePay authorization to draft the approximate Workers' Compensation premiums and remit them to the insurance company, the Client is responsible for ensuring the accuracy of the Worker's Compensation reports provided by PrimePay based upon the information supplied by Client. Except

employees must have an exemption certificate approved by the applicable state before the exemption will be coded. All new hires will be classed in the highest rated class code until the appropriate class code is provided to PrimePay. Workers' Compensation audits, required by the insurance company, are the responsibility of the Client. PrimePay will not be liable for any premiums that are due under the Client's Workers' Compensation Policy.

8. **Miscellaneous.** The Agreement shall be governed by the laws of the State of Florida. Except as provided herein, any dispute arising out of or in connection with the Agreement, if not otherwise resolved, shall be determined by binding arbitration in Tampa, Florida, in accordance with the commercial rules of the American Arbitration Association and any dispute arising out of or in connection with any other agreement between the parties may be consolidated into the same arbitration proceeding. The parties agree that the prevailing party in arbitration shall be awarded costs and attorney's fees (including in-house counsel fees) and that an Arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. This Miscellaneous provision shall survive the termination of the Agreement. The Agreement contains the entire understanding of the parties. The Client acknowledges that there have been no promises, representation or warranties made by PrimePay, or its' affiliates, or the Client, which are not set forth in the Agreement. PrimePay may modify any term of the Agreement by written notice to Client of such change and the effective date thereof. Client shall be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to PrimePay prior to the effective date of the change. If any provision of the Agreement or any portion thereof shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of the Agreement shall not in any way be affected or impaired. Without limitation, any reference herein to PrimePay shall apply to any and all affiliates of PrimePay.

9. **Assignability.** The Agreement may not be assigned by the Client to any third parties other than successors, without the prior written consent of PrimePay. Any assignment made without such consent shall be null and void.

10. **Relationship.** Except for the IRS Authorization forms, Reporting Agent Authorization and Employer Appointment of Agent, this Agreement establishes an independent contractor relationship only, by which PrimePay, and its' affiliates, will perform for Client the services described herein for the service fees. It is not intended by this Agreement that a partnership, joint venture, master/servant or similar relationship be established, and this Agreement shall not be construed in such manner.

Initials: _CWD_     Date: _1-4-04_
Initials: _____     Date: _____

03/26/04

# PRIMEPAY CLIENT SERVICES AGREEMENT

*Hayes Robertson Group Inc*

Company Name: __MANGOES__
Client Number: __15045__
Federal ID Number: ▓▓▓▓▓▓▓▓

*CWB*
(Initials)

## PRIMETAX
Client hereby engages and authorizes PrimePay, through its' affiliate PrimeTax, on or before Client's check date, to process EFT transactions, or such other payment methods as PrimeTax may require, for such amounts as are necessary to pay to proper taxing authorities, the payroll taxes which are specifically identified on the payroll journal. Such amounts are to be held in separate accounts established by PrimeTax until such time as these amounts are due to the appropriate taxing authorities. In addition, Client engages and authorizes PrimeTax to prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis.

*CWB*
(Initials)

## DIRECT DEPOSIT
Client hereby authorizes PrimePay to initiate the ACH debit file transaction forty-eight business hours (48) prior to the payroll check date.

*CWB*
(Initials)

## CHECK SIGNING
Client hereby engages and authorizes PrimePay to use Client's signature to create a computer-generated facsimile that will appear on each of Client's checks each payday.

*CWB*
(Initials)

## CHECK INSERTION
Client hereby engages and authorizes PrimeTax to insert Client's signed checks into individual employee envelopes that ~~will be sealed~~ and delivered to Client. NOT SEALED    1st checks delivered 1/10/07

*maybe*
(Initials)

## PAY AS YOU GO WORKERS' COMPENSATION PROGRAM
Client hereby engages and authorizes PrimeTax to draft workers' compensation premium from Client's account and forward to the proper entities on Client's behalf.

*N/A*
(Initials)

## 401(k) EMPLOYEE DEFERRALS AND EMPLOYER MATCH
Client hereby engages and authorizes PrimeTax to draft from Client's account and forward to the assigned institution the employee deferrals and applicable employer match monies.

*CWB*
(Initials)

## PRIMEPAY DEBIT INVOICE
Client hereby authorizes PrimePay to draft from Client's account the monthly billing invoice amount that Client would otherwise remit to PrimePay.

*CWB*
(Initials)

## PRIMESTUB
Client hereby engages and authorizes PrimePay to transmit payroll data via the internet in lieu of paper payroll direct deposit stubs for its' employees.

*CWB*
(Initials)

## PRIMESCREEN
Client hereby engages PrimePay for background and drug screening processes available for clients use in pre-employment hiring practices. As requested only.

*N/A*
(Initials)

## NO WAGES OR TAXES PAID
Client hereby confirms there have been no wages or payroll taxes paid under _____
federal identification number for the 20___ calendar year; therefore, I have no balances prior to commencing services with PrimePay.

*CWB*
(Initials)

## OTHER SERVICES
Client acknowledges and agrees that in consideration of other services provided by PrimePay or its' affiliates (PrimeTax or PrimeGroup Insurance Services, Inc.) all other services shall be governed by the Terms & Conditions of this agreement.

*I have initialed chosen services and agree to the general Terms and Conditions listed on the reverse side of this page.*

Print Authorized Officer's Name: __KAREN W. DeMent__
Authorized Officer's Signature: _____
Title: __Owner__          Date: __1/4/07__

03.26.04

# TERMS AND CONDITIONS

**1. Term of Agreement.** PrimePay's performance of service(s) under this Agreement, is subject to approval of Client's credit and shall begin upon the date specified by PrimePay. The Agreement shall continue until terminated by Client or by PrimePay in accordance with the provisions contained herein. Until the date specified by PrimePay, Client shall continue to provide for itself the services(s) requested of PrimePay.

**2. Service(s) to be Performed.** Client hereby engages PrimePay to provide the service(s) selected as indicated by the Client's initials on the preceding page. Client acknowledges and agrees that PrimePay is not rendering legal, tax, accounting, or investment advise in connection with the services to be performed. PrimeTax, an affiliate of PrimePay, for so long as this Agreement is in effect and Client is utilizing PrimePay, for the processing of employee payrolls, and to the extent the Client has specifically authorized other Drafts shall, (a) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and deposit with an appropriate authorized depository, on or before the applicable statutory deadlines, the required Federal, State and Local payroll tax withholding and employer matching obligations; (b) prepare and file all required Federal, State and Local payroll tax forms and reports and (c) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and pay to the appropriate third parties all other sums due and owing for services chosen by Client ("Drafts"). Client agrees that PrimeTax may debit directly out of a pre-designated Demand Deposit Account(s) established at a bank designated by Client the necessary payroll tax deposit and all other Drafts due under this Agreement and other charges payable in connection herewith. For such purposes, Client shall execute all requested authorization forms. Client shall maintain at all times during the term of this Agreement, a sufficient balance in this account, to be readily accessible and available on Client's Scheduled Payday, to cover debits for all current or past due payroll taxes, to cover all other Drafts, to cover an NSF charge charged by Bank or payables under this Agreement. If the Bank, upon Client's instructions or otherwise, refuses to honor any electronic funds transfer or depository transfer check, PrimeTax will assess against Client an NSF charge as authorized by Florida Statute 832.08(5)(A)(B)(C) and, PrimeTax shall not be responsible for making the then due payroll tax deposits or filings, or remitting other Drafts, and shall have no liability whatsoever with respect thereto.

**3. Payment.** Client hereby agrees to pay for all PrimePay and PrimeTax service(s) through an Electronic Funds Transfer (EFT) transaction or such other payment method as required by PrimePay. Thus, if applicable, PrimePay is hereby authorized to collect all amounts due from the Client's bank account when due. In that event, Client agrees that the funds representing the total amount due for all services must be on deposit in Client's designated bank account in collectible form and in sufficient amount on the day the PrimePay EFT charge is initiated. If sufficient funds are not available upon presentation of PrimePay's EFT charge to the Client's bank account, PrimePay may take such action to collect monies due as it deems appropriate and consistent with this or any other written agreement with Client including, but not limited to, reissuance of the EFT. PrimePay's fees for services are subject to change at any time.

**4. Client's Responsibility.** The Client agrees to accept the following obligations and responsibilities with respect to each service selected:

    A. to execute all documentation needed to originate EFT transactions and to verify availability of funds in the Client's designated bank account;

    B. to execute any other documents which may be required to perform services;

    C. to review all reports and documents forwarded to Client and to promptly inform PrimePay or PrimeTax of any inaccuracies therein;

    D. to have available in Client's bank account, sufficient funds in collectible form to cover EFT transactions provided for in the Agreement or, to make payment by wire transfer or such other payment method as required and to provide all information necessary to confirm receipt of the payment prior to the funding deadline; or

    E. to provide all necessary information, including any changes thereto, pertaining to Client's employees; and to comply with any and all applicable federal, state, or local laws or ordinances.

    F. to deliver to or otherwise provide accurate and complete payroll and employee information to calculate payroll tax and other Draft obligations **no later than one (1) banking day prior to each "Scheduled Payday". If the Scheduled Payday falls on a Saturday, Sunday or bank holiday, then such information must be delivered or provided to PrimePay no later than two (2) banking days prior to such "Scheduled Payday".** Payroll and employee information shall include, but is not limited to, employee information as required per IRS form W-4 for all active full-time and part-time employees (including all withholding exemptions and allowances), fixed salary amounts, hourly rates and hours, related information, and any other information necessary to process other Drafts. A "Scheduled Payday" means the date upon which the particular payroll paychecks for which the current payroll tax withholdings are being calculated, handled and processed by PrimePay will be dated.

    G. to immediately deliver to PrimeTax a copy of any and all notices or correspondence received by Client from any federal, state, or local taxing authority concerning any tax return or payroll tax deposit made or filed by PrimeTax.

**5. Client's Default.** Client shall be deemed in default of the Agreements in the event it fails to comply with its responsibilities as outlined in Section 4. In the event of a Client Default, PrimePay may, at its sole option, declare all amounts owed by Client to PrimePay immediately due and payable. Client agrees to promptly reimburse PrimePay or PrimeTax for all advances made

**PrimePay 0067**

by PrimePay or PrimeTax and to pay interest on the advances at the rate of one and one-half percent (1 ½ %) per month, or the maximum allowable by applicable law, until paid. Client shall execute and file all federal, state and local forms, consents and agreements necessary to effectively grant to PrimeTax full authorization to deposit and pay payroll tax items, recover and refunds and/or rebated penalty assessments, to prepare, sign and file payroll tax returns and reports and to represent, receive and submit records on behalf of Client before federal, state, or local tax offices or agencies with respect to payroll taxes.

**6. Termination.** Except as otherwise provided, the Agreements may be terminated by either party without written notice for any reason. Termination of the Agreement shall not relieve Client of any obligations set forth herein including, but not limited to, its payment obligations to PrimePay or its' affiliates.

**7. Limit of Liability.** Neither PrimePay, or its' affiliates, shall be liable for the negligence of any other person or entity including, but not limited to, the negligence of Client and its' employees or agents, or the negligence of any person or entity which provides services in connection with or as a result of PrimePay, or its' affiliates, performance of its' obligations under the Agreement. PrimePay's sole liability and the Client's sole remedy for PrimePay, or its' affiliates, breach of this Agreement shall be; (i) for PrimePay to remit to the appropriate Payee the funds received from the Client, and/or (ii) for PrimePay to reimburse the Client (or its' employees) for any interest or penalties assessed as a direct result of PrimePay, or its' affiliates, breach of the Agreement. Neither PrimePay, or its' affiliates, shall under any circumstance, be liable for any special, indirect, incidental or consequential damages which the Client may incur as a result of PrimePay, or its' affiliates, breach of the Agreement, or as a result of PrimePay, or its' affiliates, exercise of their rights under the Agreement, even if they have been advised of the possibility of such damages. Without limitation, PrimeTax shall not be liable for tax deficiencies, interest charges and/or penalties associated with any payroll tax payment or the failure to timely make any required payroll tax payment unless such deficiencies, interest charges and/or penalties result from the negligence of PrimeTax. PrimeTax assumes no responsibility and shall not be liable for failure to timely make payroll tax deposits or filings, or remit Drafts to third parties, if Client has not provided adequate and necessary payroll and employee information or if Client fails to provide PrimeTax or to maintain in the Demand Deposit Account(s), a sufficient source of monetary funds to cover such payroll tax, or other Draft obligations. In no event shall PrimeTax or PrimePay be responsible for a Client's actual liability for payroll tax withholding, employer matching or draft liabilities ("liabilities of Client") unless and until PrimeTax has, in fact, drafted funds for such liabilities of Client and then only to the extent of such drafts. Client agrees to indemnify and hold PrimePay, and its' affiliates, harmless against any and all claims, losses, damages, or expenses and to pay PrimePay for all costs, losses, damages, or expenses incurred, including, but not limited to, reasonable attorney's fees, in-house counsel fees, and EFT reissuance charges. If this Agreement gives PrimePay authorization to draft the approximate Workers' Compensation premiums and remit them to the insurance company, the Client is responsible for ensuring the accuracy of the Worker's Compensation reports provided by PrimePay based upon the information supplied by Client. Exempt

employees must have an exemption certificate approved by the applicable state before the exemption will be coded. All new hires will be classed in the highest rated class code until the appropriate class code is provided to PrimePay. Workers' Compensation audits, required by the insurance company, are the responsibility of the Client. PrimePay will not be liable for any premiums that are due under the Client's Workers' Compensation Policy.

**8. Miscellaneous.** The Agreement shall be governed by the laws of the State of Florida. Except as provided herein, any dispute arising out of or in connection with the Agreement, if not otherwise resolved, shall be determined by binding arbitration in Tampa, Florida, in accordance with the commercial rules of the American Arbitration Association and any dispute arising out of or in connection with any other agreement between the parties may be consolidated into the same arbitration proceeding. The parties agree that the prevailing party in arbitration shall be awarded costs and attorney's fees (including in-house counsel fees) and that an Arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. This Miscellaneous provision shall survive the termination of the Agreement. The Agreement contains the entire understanding of the parties. The Client acknowledges that there have been no promises, representation or warranties made by PrimePay, or its' affiliates, or the Client, which are not set forth in the Agreement. PrimePay may modify any term of the Agreement by written notice to Client of such change and the effective date thereof. Client shall be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to PrimePay prior to the effective date of the change. If any provision of the Agreement or any portion thereof shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of the Agreement shall not in any way be affected or impaired. Without limitation, any reference herein to PrimePay shall apply to any and all affiliates of PrimePay.

**9. Assignability.** The Agreement may not be assigned by the Client to any third parties other than successors, without the prior written consent of PrimePay. Any assignment made without such consent shall be null and void.

**10. Relationship.** Except for the IRS Authorization forms, Reporting Agent Authorization and Employer Appointment of Agent, this Agreement establishes an independent contractor relationship only, by which PrimePay, and its' affiliates, will perform for Client the services described herein for the service fees. It is not intended by this Agreement that a partnership, joint venture, master/servant or similar relationship be established, and this Agreement shall not be construed in such manner.

Initials: _CWD_   Date: _1-4-04_
Initials: _____   Date: _____

03/26/04

**PrimePay 0068**

# PRIMEPAY CLIENT SERVICES AGREEMENT

*4/8/07*
*11:00*

Company Name: 37 Gov't Investment, la
Client Number: 15035
Federal ID Number: ▮▮▮▮▮▮▮▮

**(Initials)** *CWB*

## PRIMETAX
Client hereby engages and authorizes PrimePay, through its' affiliate PrimeTax, on or before Client's check date, to process EFT transactions, or such other payment methods as PrimeTax may require, for such amounts as are necessary to pay to proper taxing authorities, the payroll taxes which are specifically identified on the payroll journal. Such amounts are to be held in separate accounts established by PrimeTax until such time as these amounts are due to the appropriate taxing authorities. In addition, Client engages and authorizes PrimeTax to prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis.

**(Initials)** *CWB*

## DIRECT DEPOSIT
Client hereby authorizes PrimePay to initiate the ACH debit file transaction forty-eight business hours (48) prior to the payroll check date.

**(Initials)** *CWB*

## CHECK SIGNING
Client hereby engages and authorizes PrimePay to use Client's signature to create a computer-generated facsimile that will appear on each of Client's checks each payday.

**(Initials)** *CWB*

## CHECK INSERTION
Client hereby engages and authorizes PrimeTax to insert Client's signed checks into individual employee envelopes that ~~will be sealed~~ and delivered to Client.   *NOT SEALED)*   *1st checks delivered 1/10/07*

**(Initials)** *maybe*

## PAY AS YOU GO WORKERS' COMPENSATION PROGRAM
Client hereby engages and authorizes PrimeTax to draft workers' compensation premium from Client's account and forward to the proper entities on Client's behalf.

**(Initials)** *N/A*

## 401(k) EMPLOYEE DEFERRALS AND EMPLOYER MATCH
Client hereby engages and authorizes PrimeTax to draft from Client's account and forward to the assigned institution the employee deferrals and applicable employer match monies.

**(Initials)** *CWB*

## PRIMEPAY DEBIT INVOICE
Client hereby authorizes PrimePay to draft from Client's account the monthly billing invoice amount that Client would otherwise remit to PrimePay.

**(Initials)** *CWB*

## PRIMESTUB
Client hereby engages and authorizes PrimePay to transmit payroll data via the internet in lieu of paper payroll direct deposit stubs for its' employees.

**(Initials)** *CWB*

## PRIMESCREEN
Client hereby engages PrimePay for background and drug screening processes available for clients use in pre-employment hiring practices.   *As requested only.*

**(Initials)** *N/A*

## NO WAGES OR TAXES PAID
Client hereby confirms there have been no wages or payroll taxes paid under _____ federal identification number for the 20___ calendar year; therefore, I have no balances prior to commencing services with PrimePay.

**(Initials)** *CWB*

## OTHER SERVICES
Client acknowledges and agrees that in consideration of other services provided by PrimePay or its' affiliates (PrimeTax or PrimeGroup Insurance Services, Inc.) all other services shall be governed by the Terms & Conditions of this agreement.

*I have initialed chosen services and agree to the general Terms and Conditions listed on the reverse side of this page.*

Print Authorized Officer's Name: **KAREN W. DeMent**
Authorized Officer's Signature: _____
Title: **Owner**     Date: **1/4/07**

03/26/04

**PrimePay 0060**

# TERMS AND CONDITIONS

**1. Term of Agreement.** PrimePay's performance of service(s) under this Agreement, is subject to approval of Client's credit and shall begin upon the date specified by PrimePay. The Agreement shall continue until terminated by Client or by PrimePay in accordance with the provisions contained herein. Until the date specified by PrimePay, Client shall continue to provide for itself the services(s) requested of PrimePay.

**2. Service(s) to be Performed.** Client hereby engages PrimePay to provide the service(s) selected as indicated by the Client's initials on the preceding page. Client acknowledges and agrees that PrimePay is not rendering legal, tax, accounting, or investment advise in connection with the services to be performed. PrimeTax, an affiliate of PrimePay, for so long as this Agreement is in effect and Client is utilizing PrimePay, for the processing of employee payrolls, and to the extent the Client has specifically authorized other Drafts shall, (a) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and deposit with an appropriate authorized depository, on or before the applicable statutory deadlines, the required Federal, State and Local payroll tax withholding and employer matching obligations; (b) prepare and file all required Federal, State and Local payroll tax forms and reports and (c) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and pay to the appropriate third parties all other sums due and owing for services chosen by Client ("Drafts"). Client agrees that PrimeTax may debit directly out of a pre-designated Demand Deposit Account(s) established at a bank designated by Client the necessary payroll tax deposit and all other Drafts due under this Agreement and other charges payable in connection herewith. For such purposes, Client shall execute all requested authorization forms. Client shall maintain at all times during the term of this Agreement, a sufficient balance in this account, to be readily accessible and available on Client's Scheduled Payday, to cover debits for all current or past due payroll taxes, to cover all other Drafts, to cover an NSF charge charged by Bank or payables under this Agreement. If the Bank, upon Client's instructions or otherwise, refuses to honor any electronic funds transfer or depository transfer check, PrimeTax will assess against Client an NSF charge as authorized by Florida Statute 832.08(5)(A)(B)(C) and, PrimeTax shall not be responsible for making the then due payroll tax deposits or filings, or remitting other Drafts, and shall have no liability whatsoever with respect thereto.

**3. Payment.** Client hereby agrees to pay for all PrimePay and PrimeTax service(s) through an Electronic Funds Transfer (EFT) transaction or such other payment method as required by PrimePay. Thus, if applicable, PrimePay is hereby authorized to collect all amounts due from the Client's bank account when due. In that event, Client agrees that the funds representing the total amount due for all services must be on deposit in Client's designated bank account in collectible form and in sufficient amount on the day the PrimePay EFT charge is initiated. If sufficient funds are not available upon presentation of PrimePay's EFT charge to the Client's bank account, PrimePay may take such action to collect monies due as it deems appropriate and consistent with this or any other written agreement with Client including, but not limited to reissuance of the EFT. PrimePay's fees for services are subject to change at any time.

**4. Client's Responsibility.** The Client agrees to accept the following obligations and responsibilities with respect to each service selected:

A. to execute all documentation needed to originate EFT transactions and to verify availability of funds in the Client's designated bank account;

B. to execute any other documents which may be required to perform services;

C. to review all reports and documents forwarded to Client and to promptly inform PrimePay or PrimeTax of any inaccuracies therein;

D. to have available in Client's bank account, sufficient funds in collectible form to cover EFT transactions provided for in the Agreement or, to make payment by wire transfer or such other payment method as required and to provide all information necessary to confirm receipt of the payment prior to the funding deadline; or

E. to provide all necessary information, including any changes thereto, pertaining to Client's employees; and to comply with any and all applicable federal, state, or local laws or ordinances.

F. to deliver to or otherwise provide accurate and complete payroll and employee information to calculate payroll tax and other Draft obligations **no later than one (1) banking day prior to each "Scheduled Payday". If the Scheduled Payday falls on a Saturday, Sunday or bank holiday, then such information must be delivered or provided to PrimePay no later than two (2) banking days prior to such "Scheduled Payday".** Payroll and employee information shall include, but is not limited to, employee information as required per IRS form W-4 for all active full-time and part-time employees (including all withholding exemptions and allowances), fixed salary amounts, hourly rates and hours, related information, and any other information necessary to process other Drafts. A "Scheduled Payday" means the date upon which the particular payroll paychecks for which the current payroll tax withholdings are being calculated, handled and processed by PrimePay will be dated.

G. to immediately deliver to PrimeTax a copy of any and all notices or correspondence received by Client from any federal, state, or local taxing authority concerning any tax return or payroll tax deposit made or filed by PrimeTax.

**5. Client's Default.** Client shall be deemed in default of the Agreements in the event it fails to comply with its responsibilities as outlined in Section 4. In the event of a Client Default, PrimePay may, at its sole option, declare all amounts owed by Client to PrimePay immediately due and payable. Client agrees to promptly reimburse PrimePay or PrimeTax for all advances made

03/26/C

by PrimePay or PrimeTax and to pay·interest on the advances at the rate of one and one-half percent (1 ½ %) per month, or the maximum allowable by applicable law, until paid. Client shall execute and file all federal, state and local forms, consents and agreements necessary to effectively grant to PrimeTax full authorization to deposit and pay payroll tax items, recover and refunds and/or rebated penalty assessments, to prepare, sign and file payroll tax returns and reports and to represent, receive and submit records on behalf of Client before federal, state, or local tax offices or agencies with respect to payroll taxes.

6. **Termination.** Except as otherwise provided, the Agreements may be terminated by either party without written notice for any reason. Termination of the Agreement shall not relieve Client of any obligations set forth herein including, but not limited to, its payment obligations to PrimePay or its' affiliates.

7. **Limit of Liability.** Neither PrimePay, or its' affiliates, shall be liable for the negligence of any other person or entity including, but not limited to, the negligence of Client and its' employees or agents, or the negligence of any person or entity which provides services in connection with or as a result of PrimePay, or its' affiliates, performance of its' obligations under the Agreement. PrimePay's sole liability and the Client's sole remedy for PrimePay, or its' affiliates, breach of this Agreement shall be: (i) for PrimePay to remit to the appropriate Payee the funds received from the Client, and/or (ii) for PrimePay to reimburse the Client (or its' employees) for any interest or penalties assessed as a direct result of PrimePay, or its' affiliates, breach of the Agreement. Neither PrimePay, or its' affiliates, shall under any circumstance, be liable for any special, indirect, incidental or consequential damages which the Client may incur as a result of PrimePay, or its' affiliates, breach of the Agreement, or as a result of PrimePay, or its' affiliates, exercise of their rights under the Agreement, even if they have been advised of the possibility of such damages. Without limitation. PrimeTax shall not be liable for tax deficiencies, interest charges and/or penalties associated with any payroll tax payment or the failure to timely make any required payroll tax payment unless such deficiencies, interest charges and/or penalties result from the negligence of PrimeTax. PrimeTax assumes no responsibility and shall not be liable for failure to timely make payroll tax deposits or filings, or remit Drafts to third parties, if Client has not provided adequate and necessary payroll and employee information or if Client fails to provide PrimeTax or to maintain in the Demand Deposit Account(s), a sufficient source of monetary funds to cover such payroll tax, or other Draft obligations. In no event shall PrimeTax or PrimePay be responsible for a Client's actual liability for payroll tax withholding, employer matching or draft liabilities ("liabilities of Client") unless and until PrimeTax has, in fact, drafted funds for such liabilities of Client and then only to the extent of such drafts. Client agrees to indemnify and hold PrimePay, and its' affiliates, harmless against any and all claims, losses, damages, or expenses and to pay PrimePay for all costs, losses, damages, or expenses incurred, including, but not limited to, reasonable attorney's fees, in-house counsel fees, and EFT reissuance charges. If this Agreement gives PrimePay authorization to draft the approximate Workers' Compensation premiums and remit them to the insurance company, the Client is responsible for ensuring the accuracy of the Worker's Compensation reports provided by PrimePay based upon the information supplied by Client. Exempt

employees must have an exemption certificate approved by the applicable state before the exemption will be coded. All new hires will be classed in the highest rated class code until the appropriate class code is provided to PrimePay. Workers' Compensation audits, required by the insurance company, are the responsibility of the Client. PrimePay will not be liable for any premiums that are due under the Client's Workers' Compensation Policy.

8. **Miscellaneous.** The Agreement shall be governed by the laws of the State of Florida. Except as provided herein, any dispute arising out of or in connection with the Agreement, if not otherwise resolved, shall be determined by binding arbitration in Tampa, Florida, in accordance with the commercial rules of the American Arbitration Association and any dispute arising out of or in connection with any other agreement between the parties may be consolidated into the same arbitration proceeding. The parties agree that the prevailing party in arbitration shall be awarded costs and attorney's fees (including in-house counsel fees) and that an Arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. This Miscellaneous provision shall survive the termination of the Agreement. The Agreement contains the entire understanding of the parties. The Client acknowledges that there have been no promises, representation or warranties made by PrimePay, or its' affiliates, or the Client, which are not set forth in the Agreement. PrimePay may modify any term of the Agreement by written notice to Client of such change and the effective date thereof. Client shall be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to PrimePay prior to the effective date of the change. If any provision of the Agreement or any portion thereof shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of the Agreement shall not in any way be affected or impaired. Without limitation, any reference herein to PrimePay shall apply to any and all affiliates of PrimePay.

9. **Assignability.** The Agreement may not be assigned by the Client to any third parties other than successors, without the prior written consent of PrimePay. Any assignment made without such consent shall be null and void.

10. **Relationship.** Except for the IRS Authorization forms, Reporting Agent Authorization and Employer Appointment of Agent, this Agreement establishes an independent contractor relationship only, by which PrimePay, and its' affiliates, will perform for Client the services described herein for the service fees. It is not intended by this Agreement that a partnership, joint venture, master/servant or similar relationship be established, and this Agreement shall not be construed in such manner.

Initials: _AWD_          Date: _1-11-04_
Initials: _____          Date: _____

# PRIMEPAY CLIENT SERVICES AGREEMENT

Company Name: *Red Fish Blue fish Inc*
Client Number: ~~1502~~
Federal ID Number: ████████████

*CWB*
(Initials)

## PRIMETAX
Client hereby engages and authorizes PrimePay, through its' affiliate PrimeTax, on or before Client's check date, to process EFT transactions, or such other payment methods as PrimeTax may require, for such amounts as are necessary to pay to proper taxing authorities, the payroll taxes which are specifically identified on the payroll journal. Such amounts are to be held in separate accounts established by PrimeTax until such time as these amounts are due to the appropriate taxing authorities. In addition, Client engages and authorizes PrimeTax to prepare, sign, and file with proper taxing authorities all returns for such taxes on an ongoing basis.

*CWB*
(Initials)

## DIRECT DEPOSIT
Client hereby authorizes PrimePay to initiate the ACH debit file transaction forty-eight business hours (48) prior to the payroll check date.

*CWB*
(Initials)

## CHECK SIGNING
Client hereby engages and authorizes PrimePay to use Client's signature to create a computer-generated facsimile that will appear on each of Client's checks each payday.

*CWB*
(Initials)

## CHECK INSERTION
Client hereby engages and authorizes PrimeTax to insert Client's signed checks into individual employee envelopes that ~~will be sealed~~ and delivered to Client. NOT SEALED *1st checks delivered 1/10/07*

*maybe*
(Initials)

## PAY AS YOU GO WORKERS' COMPENSATION PROGRAM
Client hereby engages and authorizes PrimeTax to draft workers' compensation premium from Client's account and forward to the proper entities on Client's behalf.

*N/A*
(Initials)

## 401(k) EMPLOYEE DEFERRALS AND EMPLOYER MATCH
Client hereby engages and authorizes PrimeTax to draft from Client's account and forward to the assigned institution the employee deferrals and applicable employer match monies.

*CWB*
(Initials)

## PRIMEPAY DEBIT INVOICE
Client hereby authorizes PrimePay to draft from Client's account the monthly billing invoice amount that Client would otherwise remit to PrimePay.

*CWB*
(Initials)

## PRIMESTUB
Client hereby engages and authorizes PrimePay to transmit payroll data via the internet in lieu of paper payroll direct deposit stubs for its' employees.

*CWB*
(Initials)

## PRIMESCREEN
Client hereby engages PrimePay for background and drug screening processes available for clients use in pre-employment hiring practices. *As requested only.*

*N/A*
(Initials)

## NO WAGES OR TAXES PAID
Client hereby confirms there have been no wages or payroll taxes paid under _____ federal identification number for the 20___ calendar year; therefore, I have no balances prior to commencing services with PrimePay.

*CWB*
(Initials)

## OTHER SERVICES
Client acknowledges and agrees that in consideration of other services provided by PrimePay or its' affiliates (PrimeTax or PrimeGroup Insurance Services, Inc.) all other services shall be governed by the Terms & Conditions of this agreement.

*I have initialed chosen services and agree to the general Terms and Conditions listed on the reverse side of this page.*

Print Authorized Officer's Name: *KAREN W. DeMent*
Authorized Officer's Signature: _____
Title: *Owner*          Date: *1/4/07*

03/26/04

# TERMS AND CONDITIONS

**1. Term of Agreement.** PrimePay's performance of service(s) under this Agreement, is subject to approval of Client's credit and shall begin upon the date specified by PrimePay. The Agreement shall continue until terminated by Client or by PrimePay in accordance with the provisions contained herein. Until the date specified by PrimePay, Client shall continue to provide for itself the services(s) requested of PrimePay.

**2. Service(s) to be Performed.** Client hereby engages PrimePay to provide the service(s) selected as indicated by the Client's initials on the preceding page. Client acknowledges and agrees that PrimePay is not rendering legal, tax, accounting, or investment advise in connection with the services to be performed. PrimeTax, an affiliate of PrimePay, for so long as this Agreement is in effect and Client is utilizing PrimePay, for the processing of employee payrolls, and to the extent the Client has specifically authorized other Drafts shall, (a) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and deposit with an appropriate authorized depository, on or before the applicable statutory deadlines, the required Federal, State and Local payroll tax withholding and employer matching obligations; (b) prepare and file all required Federal, State and Local payroll tax forms and reports and (c) either collect directly from Client or draw directly upon Client, hold in a separate PrimeTax Account and pay to the appropriate third parties all other sums due and owing for services chosen by Client ("Drafts"). Client agrees that PrimeTax may debit directly out of a pre-designated Demand Deposit Account(s) established at a bank designated by Client the necessary payroll tax deposit and all other Drafts due under this Agreement and other charges payable in connection herewith. For such purposes, Client shall execute all requested authorization forms. Client shall maintain at all times during the term of this Agreement, a sufficient balance in this account, to be readily accessible and available on Client's Scheduled Payday, to cover debits for all current or past due payroll taxes, to cover all other Drafts, to cover an NSF charge charged by Bank or payables under this Agreement. If the Bank, upon Client's instructions or otherwise, refuses to honor any electronic funds transfer or depository transfer check, PrimeTax will assess against Client an NSF charge as authorized by Florida Statute 832.08(5)(A)(B)(C) and, PrimeTax shall not be responsible for making the then due payroll tax deposits or filings, or remitting other Drafts, and shall have no liability whatsoever with respect thereto.

**3. Payment.** Client hereby agrees to pay for all PrimePay and PrimeTax service(s) through an Electronic Funds Transfer (EFT) transaction or such other payment method as required by PrimePay. Thus, if applicable, PrimePay is hereby authorized to collect all amounts due from the Client's bank account when due. In that event, Client agrees that the funds representing the total amount due for all services must be on deposit in Client's designated bank account in collectible form and in sufficient amount on the day the PrimePay EFT charge is initiated. If sufficient funds are not available upon presentation of PrimePay's EFT charge to the

Client's bank account, PrimePay may take such action to collect monies due as it deems appropriate and consistent with this or any other written agreement with Client including, but not limited to, reissuance of the EFT. PrimePay's fees for services are subject to change at any time.

**4. Client's Responsibility.** The Client agrees to accept the following obligations and responsibilities with respect to each service selected:

A. to execute all documentation needed to originate EFT transactions and to verify availability of funds in the Client's designated bank account;

B. to execute any other documents which may be required to perform services;

C. to review all reports and documents forwarded to Client and to promptly inform PrimePay or PrimeTax of any inaccuracies therein;

D. to have available in Client's bank account, sufficient funds in collectible form to cover EFT transactions provided for in the Agreement or, to make payment by wire transfer or such other payment method as required and to provide all information necessary to confirm receipt of the payment prior to the funding deadline; or

E. to provide all necessary information, including any changes thereto, pertaining to Client's employees; and to comply with any and all applicable federal, state, or local laws or ordinances.

F. to deliver to or otherwise provide accurate and complete payroll and employee information to calculate payroll tax and other Draft obligations **no later than one (1) banking day prior to each "Scheduled Payday". If the Scheduled Payday falls on a Saturday, Sunday or bank holiday,** then such information **must be delivered or provided to PrimePay no later than two (2) banking days prior to such "Scheduled Payday".** Payroll and employee information shall include, but is not limited to, employee information as required per IRS form W-4 for all active full-time and part-time employees (including all withholding exemptions and allowances), fixed salary amounts, hourly rates and hours, related information, and any other information necessary to process other Drafts. A "Scheduled Payday" means the date upon which the particular payroll paychecks for which the current payroll tax withholdings are being calculated, handled and processed by PrimePay will be dated.

G. to immediately deliver to PrimeTax a copy of any and all notices or correspondence received by Client from any federal, state, or local taxing authority concerning any tax return or payroll tax deposit made or filed by PrimeTax.

**5. Client's Default.** Client shall be deemed in default of the Agreements in the event it fails to comply with its responsibilities as outlined in Section 4. In the event of a Client Default, PrimePay may, at its sole option, declare all amounts owed by Client to PrimePay immediately due and payable. Client agrees to promptly reimburse PrimePay or PrimeTax for all advances made

03/26A

by PrimePay or PrimeTax and to pay interest on the advances at the rate of one and one-half percent (1 ½ %) per month, or the maximum allowable by applicable law, until paid. Client shall execute and file all federal, state and local forms, consents and agreements necessary to effectively grant to PrimeTax full authorization to deposit and pay payroll tax items, recover and refunds and/or rebated penalty assessments, to prepare, sign and file payroll tax returns and reports and to represent, receive and submit records on behalf of Client before federal, state, or local tax offices or agencies with respect to payroll taxes.

6. **Termination.** Except as otherwise provided, the Agreements may be terminated by either party without written notice for any reason. Termination of the Agreement shall not relieve Client of any obligations set forth herein including, but not limited to, its payment obligations to PrimePay or its' affiliates.

7. **Limit of Liability.** Neither PrimePay, or its' affiliates, shall be liable for the negligence of any other person or entity including, but not limited to, the negligence of Client and its' employees or agents, or the negligence of any person or entity which provides services in connection with or as a result of PrimePay, or its' affiliates, performance of its' obligations under the Agreement. PrimePay's sole liability and the Client's sole remedy for PrimePay, or its' affiliates, breach of this Agreement shall be: (i) for PrimePay to remit to the appropriate Payee the funds received from the Client, and/or (ii) for PrimePay to reimburse the Client (or its' employees) for any interest or penalties assessed as a direct result of PrimePay, or its' affiliates, breach of the Agreement. Neither PrimePay, or its' affiliates, shall under any circumstance, be liable for any special, indirect, incidental or consequential damages which the Client may incur as a result of PrimePay, or its' affiliates, breach of the Agreement, or as a result of PrimePay, or its' affiliates, exercise of their rights under the Agreement, even if they have been advised of the possibility of such damages. Without limitation, PrimeTax shall not be liable for tax deficiencies, interest charges and/or penalties associated with any payroll tax payment or the failure to timely make any required payroll tax payment unless such deficiencies, interest charges and/or penalties result from the negligence of PrimeTax. PrimeTax assumes no responsibility and shall not be liable for failure to timely make payroll tax deposits or filings, or remit Drafts to third parties, if Client has not provided adequate and necessary payroll and employee information or if Client fails to provide PrimeTax or to maintain in the Demand Deposit Account(s), a sufficient source of monetary funds to cover such payroll tax, or other Draft obligations. In no event shall PrimeTax or PrimePay be responsible for a Client's actual liability for payroll tax withholding, employer matching or draft liabilities ("liabilities of Client") unless and until PrimeTax has, in fact, drafted funds for such liabilities of Client and then only to the extent of such drafts. Client agrees to indemnify and hold PrimePay, and its' affiliates, harmless against any and all claims, losses, damages, or expenses and to pay PrimePay for all costs, losses, damages, or expenses incurred, including, but not limited to, reasonable attorney's fees, in-house counsel fees, and EFT reissuance charges. If this Agreement gives PrimePay authorization to draft the approximate Workers' Compensation premiums and remit them to the insurance company, the Client is responsible for ensuring the accuracy of the Worker's Compensation reports provided by PrimePay based upon the information supplied by Client. Exempt

employees must have an exemption certificate approved by the applicable state before the exemption will be coded. All new hires will be classed in the highest rated class code until the appropriate class code is provided to PrimePay. Workers' Compensation audits, required by the insurance company, are the responsibility of the Client. PrimePay will not be liable for any premiums that are due under the Client's Workers' Compensation Policy.

8. **Miscellaneous.** The Agreement shall be governed by the laws of the State of Florida. Except as provided herein, any dispute arising out of or in connection with the Agreement, if not otherwise resolved, shall be determined by binding arbitration in Tampa, Florida, in accordance with the commercial rules of the American Arbitration Association and any dispute arising out of or in connection with any other agreement between the parties may be consolidated into the same arbitration proceeding. The parties agree that the prevailing party in arbitration shall be awarded costs and attorney's fees (including in-house counsel fees) and that an Arbitration award may be entered as a judgment in any court having jurisdiction over either party to the Agreement. This Miscellaneous provision shall survive the termination of the Agreement. The Agreement contains the entire understanding of the parties. The Client acknowledges that there have been no promises, representation or warranties made by PrimePay, or its' affiliates, or the Client, which are not set forth in the Agreement. PrimePay may modify any term of the Agreement by written notice to Client of such change and the effective date thereof. Client shall be deemed to have accepted and agreed to such changes unless Client elects to terminate the Agreement by written notice to PrimePay prior to the effective date of the change. If any provision of the Agreement or any portion thereof shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of the Agreement shall not in any way be affected or impaired. Without limitation, any reference herein to PrimePay shall apply to any and all affiliates of PrimePay.

9. **Assignability.** The Agreement may not be assigned by the Client to any third parties other than successors, without the prior written consent of PrimePay. Any assignment made without such consent shall be null and void.

10. **Relationship.** Except for the IRS Authorization forms, Reporting Agent Authorization and Employer Appointment of Agent, this Agreement establishes an independent contractor relationship only, by which PrimePay, and its' affiliates, will perform for Client the services described herein for the service fees. It is not intended by this Agreement that a partnership, joint venture, master/servant or similar relationship be established, and this Agreement shall not be construed in such manner.

Initials: _CWB_  Date: _1-11-06_
Initials: _____  Date: _____

# MAJOR ACCOUNTS AGREEMENT

This Major Accounts Agreement ("Agreement") dated _1/20/09_ is by and between _Winnie DeMent_ with offices at _Haines Robertson Group_ ("Client") and ADP, Inc. with its principal office at One ADP Boulevard, Roseland, New Jersey 07068 ("ADP") for the procurement of Services (as defined in Section 1A below) from ADP in accordance with this Agreement. All references herein to "Client" shall refer to Client and its affiliates that are receiving the Services and ADP Products pursuant hereto. For purposes of this Agreement "affiliate" shall mean with respect to any individual, corporation or partnership or any other entity or organization (a "person"), any person that directly or indirectly controls, is controlled by or is under common control with such person in question. For purposes of this definition, "control" as used with respect to any person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such person, whether through ownership of voting securities or by contract or otherwise.

## 1. GENERAL TERMS

**A.** **Services.** ADP shall provide payroll, tax filing, benefits administration and other data processing services, including related web hosting services (the "Services"), equipment, computer programs, software (other than pre-packaged third-party software), and documentation ("ADP Products") all as further detailed in the description of services found at Services, to impound funds from Client's bank account to pay Client's third party payment obligations (e.g., Tax Filing Services, WGPS, TotalPay Card, FSDD Services and/or ADPCheck Services) ("Payment Services"), Client shall have sufficient, collected funds in Client's account within the deadline established by ADP to satisfy such third-party payment obligations in their entirety. ADP may commingle Client's impounded funds with other clients', ADP's or ADP-administered funds of a similar type. ALL AMOUNTS EARNED ON SUCH FUNDS WHILE HELD BY ADP WILL BE FOR THE SOLE ACCOUNT OF ADP.

**B.** **Accuracy of Client Information, Review of Data.** All Services provided hereunder will be based upon information provided to ADP by Client (including proof of federal, state and local tax identification numbers). Upon receipt from ADP, whether electronically or otherwise, Client will promptly review all disbursement records and other reports prepared by ADP for validity and accuracy according to Client's records and Client agrees that it will promptly notify ADP of any discrepancies (but in any case before distributing any paychecks or relying on any such disbursement records or reports). To help prevent employee fraud, ADP recommends that Client have someone other than its designated payroll contact review its disbursement reports; a prompt and thorough review allows Client to spot and correct errors and inconsistencies.

**C.** **Protection of Client Files.** ADP will employ commercially reasonable storage (including backup, archive and redundant data storage, on-site and off-site) and reasonable precautions to prevent the loss of or alteration to Client's data files and/or Client Content (as defined in Section 1.H.) in ADP's possession, but ADP does not undertake to guarantee against any such loss or alteration. ADP is not, and will not be, Client's official record keeper. Accordingly, Client will, to the extent it deems necessary, keep copies of all source documents of the information delivered to ADP (including maintaining printouts or electronic copies of Client Content (as defined below) input into any ADP Internet Services (as defined in Section 1.H)).

**D.** **Use of ADP Products and Services.** Client shall use the ADP Products and Services only for the internal business purposes of Client. Client shall not provide, directly or indirectly, any of the ADP Products or Services or any portion thereof to any party other than the Client. Client shall not provide service bureau or other data processing services that make use of the ADP Products or Services or any part thereof without the express written consent of ADP. Client represents that it has verified the identity of each of its employees to whom it will make payments using ADP Products or Services through appropriate documentation provided by such employee (e.g., I-9 documentation). Client shall be responsible for ensuring that its employees, plan participants and any other persons authorized by Client to access or use the Services comply with all the terms of this Agreement.

**E.** **Compliance with Laws.** Client acknowledges that the ADP Products and Services are designed to assist Client in complying with applicable laws and governmental regulations, but that Client, and not ADP, shall be solely responsible for (i) compliance with all laws and governmental regulations affecting its business, and (ii) any use Client may make of the ADP Products and/or Services (including any reports and worksheets produced in connection therewith) to assist it in complying with such laws and governmental regulations. Client will not rely solely on its use of the ADP Products and/or Services in complying with any laws and governmental regulations (including but not limited to any applicable OFAC screening requirement. Each party will be responsible for complying with all requirements of applicable law or regulation that (i) affect its business (including or (ii) regarding security breaches and suspected security breaches involving personal information that is stored on the computer systems of such party or its subcontractors. Payment Services are subject to the operating rules of the National Automated Clearing House Association ("NACHA"). ADP and Client each agree to comply with the NACHA rules applicable to it with respect to Payment Services.

**F.** **License Rights.** The right to use the ADP Products is granted to Client for the sole purpose of utilizing the Services as provided herein. Any license or right to access the ADP Products shall automatically terminate upon ADP ceasing to provide Client with related Services; provided, however, that Client shall be entitled to retain any time collection equipment that has been purchased and paid for in full by Client.

**G.** **Online Access.** Certain ADP Products or Services may be accessed by Client and its authorized employees and plan participants through the Internet at a website provided by ADP or on behalf of ADP, including those hosted by ADP on behalf

Super T & Cs Version 10
Rev. 03/17/08
Page 1 of 6

of Client (a "Site"). Client agrees to take commercially reasonable precautions to maintain the privacy of usernames and passwords for any ADP Internet Services. In addition, Client acknowledges that security of transmissions over the Internet cannot be guaranteed. ADP is not responsible for (i) Client's access to the Internet, (ii) interception or interruptions of communications through the Internet, or (iii) changes or losses of data through the Internet, in each case other than to the extent caused solely by ADP. In order to protect Client's data, ADP may suspend Client's or Client's employee(s) or plan participant(s) use of the ADP Products or Services via the Internet immediately, without prior notice, pending an investigation, if any breach of security is suspected.

H.   Client Content. "Client Content" shall mean (i) payroll, benefits, human resources and similar information provided by Client or its employees or plan participants, including transactional Information, (ii) Client's trademarks, trade names, service marks, logos and designs and (iii) any other information or materials provided by Client, regardless of form (e.g., images, graphics, text, etc.), to be included in any web-based ADP Product (collectively, "ADP Internet Services", whether included therein by ADP on behalf of Client as part of its setup services or directly by Client or any of its employees or plan participants. The following provisions shall apply with respect to Client Content:   Client shall be solely responsible for updating and maintaining the completeness and accuracy of all Client Content and for obtaining all required rights and licenses to use and display all Client Content in connection with ADP Internet Services. Client and its employees and plan participants shall not include or provide to ADP for inclusion in any ADP Internet Services any Client Content which is obscene, offensive, inappropriate, threatening, malicious, which violates any applicable law or regulation or any contract, privacy or other third party right or which otherwise exposes ADP to civil or criminal liability. ADP reserves the right to exclude or immediately remove from any ADP Internet Services any Client Content which it determines in its sole discretion violates the previous sentence, provided that ADP has no obligation to review or monitor the Client Content. Client acknowledges that, in making ADP Internet Services available, ADP is not acting as an investment advisor, broker-dealer, insurance agent or intermediary or a financial or benefit planner. ADP is not providing any benefits or information related thereto.

I.   Links to Third Party Sites. The Site(s) may contain links to other Internet sites. Links to and from a Site to other third party sites do not constitute an endorsement by ADP or any of its subsidiaries or affiliates of such third party sites or the acceptance of responsibility for the content on such sites.

J.   Transmission of Data.  In the event that Client requests that ADP provide any Client Content or employee or plan participant information to any third party or to any non-U.S. Client location, Client represents that it has acquired any consents or provided any notices required to transfer such content or information and that such transfer does not violate any applicable international, federal, state or local laws and/or regulations.

2.   FEES, TAXES & PAYMENTS

A.   Fees. Client shall pay ADP for the ADP Products and Services indicated on the Sales Order or Pricing Proposal at the rates set forth thereon for the first six months after the date this Agreement is accepted by Client (assuming no changes in requirements, specifications, volumes or quantities) (the "Initial Period"). Client shall pay ADP for the ADP Products and Services added by Client after the date hereof at ADP's then prevailing prices for such ADP Products and Services. ADP may increase prices for the ADP Products and Services at any time after the Initial Period upon at least 30 days prior written notice to Client if such change is part of a general price change by ADP to its clients for affected items. Client will pay all invoices in full within 30 thirty days of invoice date. Client shall reimburse ADP for any expenses incurred, including interest and reasonable attorney fees, in collecting amounts due ADP hereunder that are not under good faith dispute by Client.

B.   Taxes. There shall be added to all payments hereunder amounts equal to any applicable taxes levied or based on this Agreement, exclusive of taxes based on ADP's net income.

3.   DISCLAIMER OF WARRANTIES. EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, ALL EQUIPMENT PROVIDED BY ADP OR ITS SUPPLIERS IS PROVIDED "AS IS" AND ADP AND ITS LICENSORS EXPRESSLY DISCLAIM ANY WARRANTY, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, NON-INTERRUPTION OF USE, AND FREEDOM FROM PROGRAM ERRORS, VIRUSES OR ANY OTHER MALICIOUS CODE WITH RESPECT TO THE SERVICES, THE ADP PRODUCTS, ANY CUSTOM PROGRAMS CREATED BY ADP OR ANY THIRD-PARTY SOFTWARE DELIVERED BY ADP.  ADP AND ITS LICENSORS FURTHER DISCLAIM ANY WARRANTY THAT THE RESULTS OBTAINED THROUGH THE USE OF THE SERVICES, THE ADP PRODUCTS, ANY CUSTOM PROGRAMS CREATED BY ADP OR ANY THIRD-PARTY SOFTWARE DELIVERED BY ADP WILL MEET CLIENT'S NEEDS.

4.   INTELLECTUAL PROPERTY

A.   Ownership and Proprietary Rights. All ADP Products licensed to Client hereunder are the licensed and/or owned property of and embody the proprietary trade secret technology of ADP and/or its licensor(s) and are protected by copyright laws, international copyright treaties, as well as other intellectual property laws, that among other things, prohibit the unauthorized use and copying of any ADP Products. Client receives no rights to any ADP Products or any intellectual property of ADP or its licensors, except as expressly stated herein.

B.   ADP Indemnity. Subject to the remainder of this Section 4B, ADP shall defend Client in any suit or cause of action, and indemnify and hold Client harmless against any damages payable to any third party in any such suit or cause of action, alleging that the ADP Products as used in accordance with this Agreement infringe any U.S. patent, copyright, trade secret or other proprietary right of any third party. The foregoing obligations of ADP are subject to the following requirements: Client shall take all reasonable steps to mitigate any potential damages which may result; Client shall promptly notify ADP of any and

Super T & Cs Version 10
Rev. 03/17/08
Page 2 of 6

all such suits and causes of action; and ADP controls any negotiations or defense of such suits and causes of action, and Client assists as reasonably required by ADP. The foregoing obligations of ADP do not apply to the extent that the infringing ADP Product or portions or components thereof or modifications thereto were not supplied or directed by ADP, or were combined with other products, processes or materials not supplied or directed by ADP (where the alleged infringements relates to such combination).

C.   Use of Client's Authorized Marks.  In the event that ADP makes available branding of any materials, Cards and/or websites associated with the ADP Products or Services and Client requests such branding, Client grants to ADP, to the card issuers and any third party service providers designated by ADP (collectively, "Authorized Users") the right to display Client's trademarks, trade names, service marks, logos and designs designated by Client (the "Authorized Marks"), subject to Client's right to review and approve the copy prior to the use of such Authorized Marks. This authorization shall cover the term of this Agreement and, if Client is receiving TotalPay Card Services, any period of ongoing use of the Cards by employees after termination of this Agreement.

5.  **NONDISCLOSURE**  All Confidential Information disclosed hereunder will remain the exclusive and confidential property of the disclosing party.  The receiving party will not disclose the Confidential Information of the disclosing party and will use at least the same degree of care, discretion and diligence in protecting the Confidential Information of the disclosing party as it uses with respect to its own confidential information. The receiving party will limit access to Confidential Information to its affiliates, employees and authorized representatives with a need to know and will instruct them to keep such information confidential. Notwithstanding the foregoing, the receiving party may disclose Confidential Information of the disclosing party (a)  to the extent necessary to comply with any law, rule, regulation or ruling applicable to it, (b)  as appropriate and with prior notice where practicable, to respond to any summons or subpoena or in connection with any litigation and (c)  relating to a specific employee, to the extent such employee has consented to its release.  Upon the request of the disclosing party, the receiving party will return or destroy all Confidential Information of the disclosing party that is in its possession. Notwithstanding the foregoing, ADP may retain information for regulatory purposes or in back-up files, provided that ADP's confidentiality obligations hereunder continue to apply.  For purposes of this Section, "Confidential Information" shall mean: all information of a confidential or proprietary nature provided by the disclosing party to the receiving party for use in connection with ADP Products or Services, or both, but does not include (i) information that is already known by the receiving party, (ii) information that becomes generally available to the public other than as a result of disclosure by the receiving party in violation of this Agreement, and (iii) information that becomes known to the receiving party from a source other than the disclosing party on a non-confidential basis.

6.  **LIMITATION OF LIABILITY**

A.   ADP Responsibility.  ADP shall correct any Client report, data or tax agency filings, as the case may be, produced incorrectly as a result of an ADP error, at no charge to Client. Additionally, ADP shall reimburse Client for (i) actual damages incurred by Client as a direct result of the criminal or fraudulent acts or willful misconduct of ADP or any of its employees, (ii) any penalty imposed against Client as a result of an error or omission made by ADP in performing the Tax Filing Services or (iii) any interest assessed against Client as a result of ADP holding Client tax funds past the applicable due date due as a result of an error or omission made by ADP in performing the Tax Filing Services.

B.   Limit on Monetary Damages. Notwithstanding anything to the contrary contained in this Agreement (other than and subject to sections 4B and 6A above), ADP's aggregate liability under this Agreement during any calendar year for damages (monetary or otherwise) under any circumstances for claims of any type or character made by Client or any third party arising from or related to ADP Products or Services, will be limited to the lesser of (i) the amount of actual damages incurred by Client or (ii) the average monthly charges for three months for the affected ADP Products or Services during such calendar year.  ADP will issue Client a credit(s) equal to the applicable amount and any such credit(s) will be applied against subsequent fees owed by Client.

C.   No Consequential Damages. NEITHER ADP NOR CLIENT WILL BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR OTHER SIMILAR DAMAGES (INCLUDING, WITHOUT LIMITATION, ANY LOST PROFITS OR DAMAGES FOR BUSINESS INTERRUPTION OR, LOSS OF INFORMATION) THAT THE OTHER PARTY MAY INCUR OR EXPERIENCE IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES OR ADP PRODUCTS, HOWEVER CAUSED AND UNDER WHATEVER THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBLITY OF SUCH DAMAGES.

7.  **TERM AND TERMINATION; DEFAULT BY CLIENT; REMEDIES UPON DEFAULT**

A.   Termination/Suspension.  Either ADP or Client may terminate this Agreement without cause upon at least 90 or 30 days, respectively, prior written notice.  Either Party may also suspend performance and/or terminate this Agreement immediately upon written notice at any time if: (i) the other Party is in material breach of any material warranty, term, condition or covenant of this Agreement and fails to cure that breach within thirty (30) days after written notice thereof; (ii) the other party ceases business operations; or (iii) the other Party becomes insolvent, generally stops paying its debts as they become due or seeks protection under any bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceeding, or if any such proceeding is instituted against the other (and not dismissed within 90 days after commencement of one of the foregoing events).  ADP may also suspend performance and/or terminate this Agreement as set forth above in the event of any wrongful or unauthorized use of or access to the ADP Products or any other systems of ADP used in the performance of its obligations under this Agreement by Client, any end user or any other third party. Additionally, Payment Services may be immediately suspended or terminated by ADP without prior notice if (i) ADP has not received timely funds from Client as

Super T & Cs Version 10
Rev. 03/17/08
Page 4 of 6

required by Section 1A above; (ii) a bank notifies ADP that it is no longer willing to originate debits from Client's account(s) and/or credits for Client's behalf for any reason, (iii) the authorization to debit Client's account is terminated or ADP reasonably believes that there is or has been fraudulent activity on the account, (iv) ADP reasonably determines that Client no longer meets ADP's credit/financial eligibility requirements for such Services or (v) Client has any material adverse change in its financial condition.

B.  Post-Termination. If use of any ADP Products or Services are or may be terminated by ADP pursuant to Sections 7.A. ADP shall be entitled to allocate any funds remitted or otherwise made available by Client to ADP in such priorities as ADP (in its sole discretion) may determine appropriate (including reimbursing ADP for payments made by ADP hereunder on Client's behalf to a third party) and if any such ADP Products or Services are terminated, Client will immediately; (i) become solely responsible for all of its third-party payment obligations covered by such ADP Products or Services then or thereafter due (including, for Tax Filing Services, all related penalties and interest); (ii) reimburse ADP for all payments made by ADP hereunder on Client's behalf to any third party; and (iii) pay any and all fees and charges invoiced by ADP to Client relating to the ADP Products or Services.

8.  FUNDING   Client shall be liable for debits properly initiated by ADP hereunder. Client unconditionally promises to pay to ADP the amount of any unfunded payroll file (including any debit that is returned to ADP because of insufficient or uncollected funds or for any other reason), upon demand and pay interest at the rate of 1.5% per month (or the maximum allowed by law if less). Also, if any debit to an employee or other payee's account reversing or correcting a previously submitted credit(s) is returned for any reason, Client unconditionally promises to pay the amount of such debit upon demand and interest thereon at the rate set forth in this Section 8.. Client shall be liable for, and shall indemnify ADP against, any loss, liability, claim, damage or exposure arising from or in connection with any fraudulent or criminal acts of Client's employees or payees.  Client agrees to cooperate with ADP and any other parties involved in processing any transactions hereunder to recover funds credited to any employee as a result of an error made by ADP or another party processing a transaction on behalf of ADP.

9.  MISCELLANEOUS
A

A..  Inducement. Client has not been induced to enter into this Agreement by any representation or warranty not set forth in this Agreement.  This Agreement contains the entire agreement of the parties with respect to its subject matter and supersedes and overrides all prior agreements on the same subject matter, and shall govern all disclosures and exchanges of Confidential Information made by the parties previously hereto.  This Agreement shall not be modified except by a writing signed by ADP and Client.

B.  Third-Party Beneficiaries. With respect to the Services and ADP Products, ADP suppliers, vendors and referral partners may enforce the same disclaimers and limitations against Client as ADP may under Sections 3 and 6 of this Agreement.  Other than ADP suppliers, vendors, and referral partners who are intended third party beneficiaries with respect to Sections 3 and 6 of this Agreement, nothing in this Agreement creates, or will be deemed to create, third party beneficiaries of or under this Agreement. ADP has no obligation to any third party (including client's employees and/or any taxing authority) by virtue of this Agreement.

C.  Force Majeure.  Any party hereto will be excused from performance under this Agreement for any period of time that the party is prevented from performing its obligations hereunder as a result of an act of God, war, utility or communication failures, or other cause beyond the party's reasonable control.  Both parties will use reasonable efforts to mitigate the effect of a force majeure event.

D.  Non-Hire.  During the term of this Agreement and for the twelve months thereafter, neither Client nor the ADP regions providing the Services, shall knowingly solicit or hire for employment or as a consultant, any employee or former employee of the other party who has been actively involved in the subject matter of this Agreement.

E.  Waiver.   The failure of either party at any time to enforce any right or remedy available to it under this Agreement with respect to any breach or failure by the other party shall not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other party.

F.  Severability.  If any of the provisions of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement, but rather the entire Agreement shall be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of Client and ADP shall be construed and enforced accordingly.

G.  Relationship of the Parties.  The parties hereto expressly understand and agree that each party is an independent contractor in the performance of each and every part of this Agreement, is solely responsible for all of its employees and agents and its labor costs and expenses arising in connection therewith.

H.  Governing Law.  This Agreement is governed by the laws of the State of New York without giving effect to its conflict of law provisions.

I.  Conflicts Clause.   In the event of a conflict between the terms of this Agreement and any additional terms, the terms of this Agreement shall control.

J.  Regulatory Notice.  No state or federal agency monitors or assumes any responsibility for the financial solvency of third-party tax filers.

L. Use of Agents. ADP may designate any agent or subcontractor to perform such tasks and functions to complete any services covered under this Agreement. However, nothing in the preceding sentence shall relieve ADP from responsibility for performance of its duties under the terms of this Agreement.

**ADP, Inc.**

ADP Sales
Associate _(signature)_

Name _Sheri Ruiz_
(type or print)

Title _Workforce_        Date _1/20/09_
_Management_
_Consultant_

**CLIENT**

Client
Signature: _(signature)_

Name _Winnie DeMent_
(type or print)

Title _owner_        Date _1/20/09_

## PRODUCT SCHEDULE

To the extent that Client receives any of the following ADP Products or Services, the specified provisions relating to such ADP Products or Services received by Client shall apply.

**FULL SERVICE DIRECT DEPOSIT:** Prior to the first credit to the account of any employee or other individual (a "Payee"), Client shall obtain and retain a signed authorization from such Payee authorizing the initiation of credits to such Payee's account and debits of such account to recover funds credited to such account in error.

**ADPCHECK™:** Client agrees not to distribute any ADPChecks to Payees prior to 4:00 PM local time on the banking day immediately before pay date. If Client desires to stop payment on any ADPCheck, Client shall provide ADP with a stop payment request in a form provided by ADP. ADP shall then place a stop payment order with ADP's bank within twenty-four (24) hours of ADP's receipt of such stop payment request. Client shall not request ADP to stop payment on any ADPCheck that represents funds to which the applicable Payee is rightfully entitled. Client agrees to indemnify, defend and hold harmless ADP and its affiliates and their successors and assigns from and against any liability whatsoever for stopping payment on any ADPCheck requested by Client and from and against all actions, suits, losses, claims, damages, charges, and expenses of every nature and character, including attorneys fees, in any claims or suits arising by reason of stopping payment on said check, including claims made by a "holder in due course" of such check.

**TIME AND LABOR MANAGEMENT (INCLUDING EZLABORMANAGER®, ENTERPRISE eTIME AND ETIME ℠)**
A.   Client shall provide and install all power, wiring and cabling required for the installation of any data or time collection devices (e.g., HandPunch, Timeclock) (the "Timeclock Equipment"). Client shall also pay an installation and set-up fee for each unit of Timeclock Equipment if such equipment is installed on Client's premises by ADP.
B.   Client shall not make any alterations or attach any device not provided by ADP to the Timeclock Equipment. Title to the Timeclock Equipment shall at all times remain in ADP unless Client has chosen the purchase option and has paid ADP in full the purchase price. Except if so purchased and paid for by Client, the Timeclock Equipment is and at all times shall remain, a separate item of personal property notwithstanding its attachment to other Timeclock Equipment or real property and Client shall not remove the Timeclock Equipment from the site of original installation without ADP's prior consent.
C.   Upon termination or cancellation of this Agreement, Client shall, at its expense, return the Timeclock Equipment to ADP in accordance with ADP's instructions. The Timeclock Equipment shall be returned in as good condition as received by Client, normal wear and tear excepted. In the event the Timeclock Equipment is not returned within 90 days, Client agrees to purchase it at the prevailing manufacturer's suggested retail price. If timely payment for the Timeclock Equipment is not made by Client, ADP shall have the right to take immediate possession of such equipment. The terms of this Section C. shall not apply if prior to the time of such termination or cancellation Client has already purchased and paid for the Timeclock Equipment in full.
D.   ADP warrants to Client that the Timeclock Equipment shall be free from defects in material and workmanship at the date such Timeclock Equipment is shipped and for 90 days thereafter. ADP's sole obligation in case of any breach of any warranty contained herein shall be to repair or replace, at ADP's option, any defective items. The foregoing is the extent of ADP's liability with respect to all claims related to Timeclock Equipment, including without limitation, contract and negligence claims and shall constitute Client's sole remedy.
E.   Maintenance services for the Timeclock Equipment (set forth below in Section F.) apply automatically to Timeclock Equipment obtained under the subscription option (and any charges therefore are already included in the monthly time and labor
Super T & Cs Version 10
Rev. 03/17/08
Page 5 of 6

management subscription fees). The costs for maintenance services for Timeclock Equipment under the purchase option are not included in the purchase price for such equipment; a separate annual maintenance fee applies. A Client under the purchase option may terminate its receipt of maintenance services by providing written notice to ADP no less than 30 days prior to the end of the then current annual coverage period. ADP is not required to rebate to Client any maintenance fees relating to a current or prior coverage period. (NOTE: If a Client selects the purchase option but opts not to receive (or terminates) maintenance services hereunder by executing a waiver of maintenance services, any such services provided by ADP at Client's request will be subject to ADP's then current charges for such services.) No Timeclock Equipment maintenance is done at the Client site. Client shall bear all delivery/shipping costs and all risk of loss during shipment/delivery of Timeclock Equipment relating to maintenance services.

F.  ADP will maintain the Timeclock Equipment to be free from defects in material and workmanship as follows: (i) Any parts found to be defective (except as specifically excluded below) shall be replaced or repaired, at ADP's or it's designee's option, without charge for parts or labor, provided that the Timeclock Equipment has been properly installed and maintained by Client and provided that such equipment has been used in accordance with any documentation or Additional Terms (as defined in the Agreement to which this Product Schedule applies) provided by ADP or its designee and has not been subject to abuse or tampering. The foregoing repairs and replacements may be made only by ADP or its designee, and will be made only after ADP or its designee is notified of a problem, receives delivery from Client of the Timeclock Equipment at issue and determines that it results from defective materials or workmanship. Notwithstanding the foregoing, ADP may deliver a temporary replacement item for Client's use while such determination is being made with respect to the Timeclock Equipment in question. Repairs and replacements required as a result of any of the following shall not be included in the foregoing maintenance services and shall be charged at ADP's then current rates:  a) Damage, defects or malfunctions resulting from misuse, accident, neglect, tampering, unusual physical or electrical stress, or causes other than normal or intended use; b) Failure of the Client to provide and maintain a suitable installation environment; c) Any alterations made to or any devices not provided by ADP attached to the Timeclock Equipment; and d) Malfunctions resulting from use of badges or supplies not approved by ADP.

G.  In order to keep the products current, ADP may from time to time perform maintenance fixes and other upgrades to the TLM products Client is then receiving. ADP will perform these upgrades on Client's behalf for all hosted products. For non-hosted products, Client will be required to install the upgrade provided by ADP in accordance with the written notice provided to Client.

H.  The TLM Products are hosted by ADP in the United States. Client is responsible for complying with all applicable data protection laws and represents that they have obtained any employee consents necessary (or otherwise have complied with applicable law) to transmit the information to ADP in the United States or otherwise make the ADP TLM Products available to its employees outside the United States. The TLM Products may not be used or accessed in any way that violates any applicable international, federal, state or local laws and /or regulations.

## ADP HR/BENEFITS SOLUTION

A.  Client shall promptly deliver to ADP the Client Content (as defined in Section I.H. of the Agreement to which this Product Schedule applies) required by ADP to perform initial setup services ( the "HR/Benefits Application"). Such information and materials shall be in an electronic file format specified by ADP.

B.  Client shall begin paying the per employee fees for the ADP HR/Benefits Application on the earlier of the date that  Client first begins to use such application in a production environment OR 90 days from the date of the signature of this Agreement. _____ (Client Initial Here)

C.  After completion of initial setup services, ADP will make any subsequent changes to the configuration of the Client Content at Client's request, in HR/Benefits Application at ADP's then current benefits maintenance fees.

D.  Upon completion of any setup services or services referenced in Section B. above, Client shall review the Client Content included in the HR/Benefits Application by ADP. ADP shall have no liability to Client for any errors or inaccuracies in Client Content included in HR/Benefits Application by ADP that has been reviewed by Client.

E.  If Client elects the ADP carrier connection service, ADP, or its authorized agent(s), will electronically transmit employee data, including employee benefits enrollment data, to Client's carriers or other third parties authorized by Client, and Client authorizes ADP and its authorized agent(s), to provide such transmission on Client's behalf. In addition: (i) Commencement of the carrier connection service is subject to completion by Client of setup of the configuration of the Client Content and the format of such transmission to the designated carriers. The terms for setup services and subsequent setup services set forth in Sections A. and B. above will apply to setup for the carrier connection service. (ii) ADP's ability to transmit Client's employee benefits enrollment data is subject to the provision by the designated carriers of a current functional interface between HR/Benefits Application and the designated carriers' systems. ADP will not be obligated to transmit Client's data to the designated carriers if at any time Client's designated carriers fail to provide the proper interface as described above. If Client requires the development of any special interfaces in order to transmit such data to the designated carriers, all work performed by ADP to create such interfaces will be at ADP's then current fees for such services. (iii) Client is responsible for promptly reviewing all records of carrier transmissions and other reports prepared by ADP for validity and accuracy according to Client's records, and Client will notify ADP of any discrepancies promptly after receipt thereof. In the event of an error or omission in the carrier connection services caused by ADP, ADP will correct such error or omission, provided that Client promptly advises ADP of such error or omission.

Super T & Cs Version 10
Rev. 03/17/08
Page 6 of 6